UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MICHAEL ANDERSON BALENTINE,

                              Plaintiff,

          -against-                                    9:21-CV-1383 (LEK/CFH)

ANTHONY J. ANNUCI, *et al.*,

                              Defendants.

**MEMORANDUM DECISION AND ORDER**

**I.    INTRODUCTION**

The Clerk has sent to the Court for review a pro se civil rights complaint filed by Plaintiff

Michael Anderson Balentine pursuant to 42 U.S.C. § 1983 ("Section 1983") asserting claims

arising out of his confinement in the custody of the New York State Department of Corrections

and Community Supervision ("DOCCS") at Marcy Correctional Facility ("Marcy C.F."). Dkt.

No. 1 ("Complaint").

Plaintiff, who is presently confined at Collins Correctional Facility ("Collins C.F.") has

not paid the statutory filing fee and seeks leave to proceed in forma pauperis. Dkt. No. 11 ("IFP

Application").[1] With the Complaint, Plaintiff filed a motion for the appointment of counsel (Dkt.

No. 4) and a motion for a preliminary injunction (Dkt. No. 5). On May 11, 2022, Plaintiff filed a

motion to "add facts, defendants, and exhibits." Dkt. No. 16.

**II.    MOTION TO ADD FACTS, DEFENDANTS, AND EXHIBITS**

On March 24, 2022, Plaintiff initiated a separate suit by filing a complaint in this District

---

[1] On January 3, 2022, the case was administratively closed due to Plaintiff's failure to
submit a complete IFP application. Dkt. No. 6. On March 24, 2022, upon receipt of Plaintiff's
second IFP Application, the case was reopened. Dkt. Nos. 11, 13.

asserting claims arising out of his confinement at Mid-State Correctional Facility ("Mid-State C.F."). See Balentine v. Jane Red, et al., No. 22-CV-285, Dkt. No. 1 (N.D.N.Y. filed Mar. 24, 2022) ("Balentine II"). In a Decision and Order filed on May 3, 2022 in Balentine II, the court granted Plaintiff's IFP Application and found that the Eighth Amendment and state law claims against Jane Red and Jane Blonde survived review and required a response. Dkt. No. 6.

On May 11, 2022, Plaintiff filed a letter motion in this action listing two civil action numbers— the number for this action as well as that for Balentine II. Dkt. No. 16. The motion includes a four page, single-spaced document, with facts related to Plaintiff's confinement at Mid-State C.F. See id. at 1–4. Plaintiff describes events that occurred at Mid-State C.F. in January 2022 and February 2022 involving individuals identified as B.E. Doe, Morat, Gall, Harlan, Tapia, and Elmer Doe. See id. These individuals are not listed in the Complaint in the current action. Plaintiff also refers to Defendant Red, who is not a defendant herein, but is a defendant in Balentine II. See id. at 2. In the conclusion of his affirmation, Plaintiff refers to both the instant action and Balentine II and moves "for assignment of counsel on the same grounds that I moved for it in 9:21-CV-1383[.]" Id. at 4.

In this District, if a litigant has more than one action pending, any paper filed in a case must contain and relate to one civil action number unless the civil actions have been consolidated by the Court. Any motion or other papers purporting to relate to more than one action will not be accepted for filing and may be stricken by the Court. Local Rule 10.1(c)(1). Here, Plaintiff's letter motion includes both civil action numbers. The submission does not include a caption and, based upon the allegations in the letter, it is not clear which action Plaintiff intended this letter to supplement; the instant action or Balentine II.

2

At this juncture, the Court will not accept the submission at Dkt. No. 16 as an amendment or supplement to the operative pleading and will deny the motion, without prejudice to renew.

Plaintiff is warned that in the future, each document (except for a change of address) that he files must apply to only one case at a time; Plaintiff is not to place multiple civil action numbers at the top of a document. Documents that do not comply with Local Rule 10.1(c)(1) may be stricken.

## III. IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." Cash v. Bernstein, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).[2] "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." Id. (citing 28 U.S.C. § 1915(b) and Harris v. City of New York, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review of Plaintiff's IFP Application, the Court finds that he has demonstrated sufficient economic need. See 28 U.S.C. § 1915(a)(2). Plaintiff also filed the inmate authorization form required in this District. See Dkt. No. 12. Accordingly, the Court grants

---

[2] Section 1915(g) prohibits a prisoner from proceeding in forma pauperis where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. See 28 U.S.C. § 1915(g). The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. See http://pacer.uspci.uscourts.gov. It does not appear from that review that Plaintiff had accumulated three strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

Plaintiff's IFP Application.

## III.    SUFFICIENCY OF THE COMPLAINT

### A. Standard of Review

Having found that Plaintiff meets the financial criteria for commencing this action in

forma pauperis, and because Plaintiff seeks relief from an officer or employee of a governmental

entity, the Court must consider the sufficiency of the allegations set forth in the Complaint in

light of 28 U.S.C. §§ 1915(e) and 1915A. Section 1915(e) of Title 28 of the United States Code

directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case

at any time if the court determines that— . . . (B) the action . . . (i) is frivolous or malicious; (ii)

fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a

defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[3]

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action

in which a prisoner seeks redress from a governmental entity or officer or employee of a

governmental entity" and must "identify cognizable claims or dismiss the complaint, or any

portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim

upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune

from such relief." 28 U.S.C. § 1915A(b); see also Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir.

1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against

government officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, the Court may also look to the Federal Rules

---

[3] To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989).

of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." See Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Hudson v. Artuz, No. 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting Powell v. Marine Midland Bank, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While acourt should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. Sheehy v. Brown, 335 F. App'x 102, 104 (2d Cir. 2009).

The Court will construe the allegations in Plaintiff's pro se Complaint with the utmost leniency. See, e.g., Haines v. Kerner, 404 U.S. 519, 520 (1972) (holding that a pro se litigant's

complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

**B. Summary of the Complaint**[4]

The following facts are set forth as alleged by Plaintiff in his Complaint.

In January 2021, Plaintiff was transferred from Five Points Correctional Facility to Marcy C.F. and assigned to the J1 Reception Dorm Unit. Compl. at 2. On or around January 27, 2021, while Plaintiff was in the package room, Defendant Correctional Officer Nick Doe ("N. Doe") sexually harassed and threatened Plaintiff and told him that he "better hope he doesn't see him out there." Id. Plaintiff returned to the J1 Unit and called the Office of Special Investigation ("OSI") to report the incident. Id. On January 28, 2021, Plaintiff was reassigned to the D1 Unit. Id. On February 3, 2021, Plaintiff was interviewed by an OSI officer. Id. at 2–3.

On February 6, 2021, Plaintiff was assaulted by two other inmates, who were members of the "Bloods" gang. Id. at 3. The inmates assaulted Plaintiff because he refused to wash their dishes and do other chores as "penance for being a sex offender – or a 'Rapo' in their words." Id. Plaintiff reported the incident to the Unit Officer and asked to be transferred to a different housing unit. Id. Defendant Sergeant J. Deusler ("Deusler") was called to the scene and questioned Plaintiff and the other inmates about the incident. Dkt. No 5-2 at 28. Based upon his investigation, Deusler concluded that Plaintiff was involved in a fight in the D1 Dorm. Id.

Plaintiff was transported to the infirmary and taken to the examination room. Id. at 3. N.

---

[4] Plaintiff's motion for a preliminary injunction/temporary restraining order (Dkt. No. 5) includes exhibits that are relevant to the incidents described in the Complaint. See Dkt. No. 5-2. In light of Plaintiff's pro se status, the Clerk of the Court is directed to attach Plaintiff's submission (Dkt. No. 5-2) to the Complaint. The Complaint, with the aforementioned attachments, shall be considered the operative pleading. See Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

Doe entered the room and stated, "[i]t's probably not a good idea to tell on staff." Id. Plaintiff

responded that he was "scared of him" and N. Doe replied, "[you] should be." Id. Plaintiff was

reassigned to J1 Unit. Id.

 As a result of the February 6, 2021 altercation, Deusler issued a misbehavior report

charging Plaintiff with fighting and violent conduct. Dkt. No. 5-2 at 28. On February 10, 2021,

Plaintiff attended a Tier II disciplinary hearing related to the misbehavior report. Compl. at 3;

Dkt. No. 5-2 at 29. Plaintiff was found guilty of the charges and sentenced to twenty-six days in

keeplock. Dkt. No. 5-2 at 30. The presiding officer told Plaintiff that he would "order a 'hold' on

[him] in the J1 housing unit for [his] safety." Compl. at 3. However, on February 28, 2021,

Plaintiff was reassigned to the H2 Unit. Id.

 On March 11, 2021, Plaintiff was reassigned to the F2 Unit. Compl. at 3. The same day,

an unidentified inmate gave Plaintiff a sexually explicit note. Id. at 3–4. On March 12, 2021, the

same inmate exposed himself to Plaintiff in the bathroom. Id. at 4. Immediately thereafter,

Plaintiff wrote a letter to defendant Correctional Officer Fenton ("Fenton") and reported the

incidents. Id. Plaintiff provided Fenton with the note that the inmate gave to him. Id. at 4. One

hour later, Fenton advised Plaintiff that he would be moved from the F2 Unit "that same day." Id.

However, Plaintiff was not moved. Id.

 On March 13, 2021, Plaintiff was approached by Defendant Inmate Johnson ("Johnson"),

a member of the "Bloods," who told Plaintiff he was "required to do dishes and other chores" for

the gang because he was a "Rapo." Compl. at 4. Plaintiff refused and, as a result, Johnson

"attacked and savagely beat" Plaintiff causing him to "bleed[] profusely" from his mouth and

nose. Id. Plaintiff reported the incident and Defendant Sergeant F. Reynolds ("Reynolds")

responded. Id. Reynolds called Plaintiff "a liar" and said he "would just bring [him] right back to get [his] ass kicked again." Id. An unidentified sergeant ordered Plaintiff to "sign a piece of paper" that Plaintiff "did not immediately realize was a PC waiver." Dkt. No. 5-2 at 15–16. On Reynolds' orders, Plaintiff was reassigned to D1. Compl. at 4.

On March 13, 2021, Reynolds issued a misbehavior report charging Plaintiff with fighting, violent conduct, and creating a disturbance. Dkt. No. 5-2 at 34.

On March 14, 2021, Reynolds, Defendant Sergeant Mr. Brown ("Brown"), and Defendant Sergeant John Doe ("J. Doe") entered the D1 to "call count." Compl. at 5; Dkt. No. 5-2 at 16. After they left, other inmates made derogatory remarks and told Plaintiff that "Sgt. Brown wanted them to 'beat my ass.'" Dkt. No. 5-2 at 16. Later that evening, Plaintiff wrote to Defendant Housing Unit Sergeant Patrick Fountain ("Fountain") and asked to be "moved to a safe dorm." Id.

On March 15, 2021, Plaintiff was reassigned to F2. Compl. at 5. On March 16, 2021, Plaintiff was reassigned to the E2 housing unit. Id.

On March 18, 2021, Plaintiff attended a disciplinary hearing related to the March 2021 misbehavior report. Dkt. No. 5-2 at 35. Plaintiff plead guilty to creating a disturbance. Id.

On March 23, 2021, Fountain called Plaintiff to the sergeant's office. Compl. at 6. On his way to the office, N. Doe threatened Plaintiff. Id. When Plaintiff arrived at the office, Defendant Housing Unit Sergeant Mr. Bennett ("Bennett"), Fountain, and another officer questioned Plaintiff about the March 13, 2021 incident. Id. Plaintiff identified Johnson and provided a statement. Id. Plaintiff was told to return to his unit. Id. at 7.

On March 24, 2021, Fountain issued an Involuntary Protective Custody Recommendation

and stated, "Inmate Balentine is now attempting to change his story" regarding the attack. Dkt. No. 5-2 at 38. Fountain claimed Plaintiff was initially "uncooperative," but now identified the other inmate and "seek[s] criminal and civil charges." Id. Fountain noted, "I do not find this to be credible, however, by doing this I feel he put his safety here at Marcy in jeopardy." Id.

On March 25, 2021, Plaintiff filed a grievance (MSY 882-1) claiming that he was "unsafe." Dkt. No. 5-2 at 7–18. Plaintiff was ordered back to the sergeant's office where he was told he was being admitted to Involuntary Protective Custody ("IPC"). Compl. at 7.

On May 7, 2021, Plaintiff sent a letter to Defendant Superintendent Reardon ("Reardon") inquiring about the status of his grievance. Dkt. No. 5-2 at 19. On May 12, 2021, Plaintiff's grievance was denied. Id. at 21.

Construing the Complaint liberally,[5] Plaintiff asserts the following: (1) First Amendment retaliation claims; (2) Eighth Amendment claims; (3) conspiracy claims; and (4) equal protection claims against various defendants; as well as (5) supervisory claims against Reardon and Defendant Anthony J. Annucci ("Annucci"). See Compl. at 7–8. Plaintiff seeks monetary damages, a declaratory judgment, and injunctive relief. See id. at 8–9. For a complete statement of Plaintiff's claims and the facts he relies on in support of those claims, reference is made to the

---

[5]  The Court is mindful of the Second Circuit's instruction that a pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests. See, e.g., Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts" that a pro se plaintiff's pleadings must be construed liberally); Phillips v. Girdich, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [Plaintiff] has raised. In so doing, the court's imagination should be limited only by [Plaintiff's] factual allegations, not by the legal claims set out in his pleadings."); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [a pro se litigant's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest.").

Complaint.

## C. Nature of Action

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 ("Section 1983"), which establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990)); see also Myers v. Wollowitz, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J.) (finding that "[Section] 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights"). "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993).

## IV.   ANALYSIS

### A. Preliminary Matters

#### 1. Claim Against Housing Unit Sergeant Glenn McGuire and Correctional Officer Mr. Stockton

It is well-settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)); Iqbal, 556 U.S. at 676. "[A] Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" Austin v. Pappas, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted). In a recent decision, the Second Circuit held that "there is no special rule for supervisory liability" and, that a "plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, had violated the

Constitution.'" Tangreti v. Bachmann, 983 F.3d. 609 (2d Cir. 2020).

Plaintiff identified McGuire and Stockton as defendants in the caption of the Complaint and in the list of parties. Compl. at 1. However, Plaintiff has not pled facts suggesting that McGuire or Stockton were personally involved in any alleged constitutional violation. Indeed, McGuire and Stockton are not referenced anywhere in the body of the Complaint or in exhibits provided with Plaintiff's motion for a injunctive relief. In the absence of factual allegations sufficient to plausibly suggest that McGuire or Stockton were personally involved in conduct that violated Plaintiff's constitutional rights, the Complaint fails to state a cognizable claim against them. See Cipriani v. Buffardi, No. 06-CV-0889, 2007 WL 607341, at *1 (N.D.N.Y. Feb. 20, 2007) ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff.") (citation omitted); see also Casino v. Rohl, No. 14-CV-2175, 2014 WL 5425501, at *6 (E.D.N.Y. Oct. 23, 2014) (dismissing complaint since the plaintiff had not adequately pled defendant's personal involvement in any of the constitutional deprivations alleged).

### 2. Claims Against Johnson

Construing the Complaint liberally, Plaintiff attempts to assert Eighth Amendment claims against inmate Johnson. In order to sustain a cause of action under Section 1983, a plaintiff must establish that defendants acted under the color of state law. See Rounseville v. Zahl, 13 F.3d 625, 628 (2d Cir. 1994); see also Dennis v. Sparks, 449 U.S. 24, 29 n.4 (1980) (to act under color of state law, a plaintiff must allege that a private person was "a willful participant in joint activity with the State or its agents"). Here, Plaintiff has not alleged that Johnson acted under the color of state law and does not allege that Johnson conspired with Defendants to violate Plaintiff's

constitutional rights. Therefore, Plaintiff's Section 1983 claims against Johnson are subject to
dismissal for failure to state a cognizable claim. See Lewis v. Doe, No. 13-CV-3190, 2013 WL
5923723, at *1 (E.D.N.Y. Oct. 31, 2013); Macaluso v. Nassau County Corr. Ctr., No.
13-CV-6206, 2014 WL 1401429, at *6 (E.D.N.Y. Apr. 8, 2014) (dismissing Section 1983 claim
where that the plaintiff failed to allege that the inmate/defendant had "any connection with any
government body"); see also Polson v. Fischer, No. 08-CV-30, 2008 WL 788567, at *1–2
(N.D.N.Y. Mar. 20, 2008) (dismissing excessive force claim against inmate because the plaintiff
did not allege that the inmate was acting under color of state law, as required to state cognizable
claim under Section 1983)).

### B. Eleventh Amendment

The Eleventh Amendment has long been construed as barring a citizen from bringing a
suit against his or her own state in federal court, under the fundamental principle of sovereign
immunity. See U.S. Const. amend. XI ("The Judicial power of the United States shall not be
construed to extend to any suit in law or equity, commenced or prosecuted against one of the
United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); see
also Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267 (1997); Pennhurst State Sch. &
Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Hans v. Louisiana, 134 U.S. 1, 10-21 (1890).
Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states'
immunity or a state expressly consents to suit. Gollomp v. Spitzer, 568 F.3d 355, 365–66 (2d Cir.
2009). It is well-settled that Congress did not abrogate states' immunity through Section 1983,
see Quern v. Jordan, 440 U.S. 332, 343–45 (1979), and that New York State has not waived its
immunity from suit on the type of claims asserted in Plaintiff's Complaint. See generally

Trotman v. Palisades Interstate Park Comm'n, 557 F.2d 35, 38-40 (2d Cir. 1977); see also

Dawkins v. State of New York, No. 93-CV-1298, 1996 WL 156764 at *2 (N.D.N.Y. 1996).

Actions for damages against a state official in his or her official capacity are essentially actions

against the state. See Will v. Mich. Dep't. of State Police, 491 U.S. 58, 71 (1989).

Plaintiff's claims for money damages pursuant to Section 1983 against Defendants in

their official capacities (see Compl. at 1) are barred by the Eleventh Amendment and are

dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b). See

Kentucky v. Graham, 473 U.S. 159, 169 (1985) (a claim for damages against state officials in

their official capacity is considered to be a claim against the State and is therefore barred by the

Eleventh Amendment); Ying Jing Gan v. City of New York, 996 F.2d 522, 529 (2d Cir. 1993)

("To the extent that a state official is sued for damages in his official capacity, such a suit is

deemed to be a suit against the state, and the official is entitled to invoke the Eleventh

Amendment immunity belonging to the state."); Severino v. Negron, 996 F.2d 1439, 1441 (2d

Cir. 1993) ("[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983]

for money damages against state officials in their official capacities.").

**C. First Amendment Retaliation**

To state a claim of retaliation under the First Amendment, a plaintiff must allege facts

plausibly suggesting the following: (1) the speech or conduct at issue was "protected;" (2) the

defendants took "adverse action" against the plaintiff, (3) there was a causal connection between

the protected speech and the adverse action—in other words, that the protected conduct was a

"substantial or motivating factor" in the defendant's decision to take action against the plaintiff.

Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); see also Gill v.

Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004).

The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." Dawes, 239 F.3d at 491, overruled on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002) (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983)).

The filing of a grievance is constitutionally protected conduct. Johnson v. Eggersdorf, 8 Fed. App'x 140, 144 (2d Cir. 2001); Graham v. R.J. Henderson, 89 F.3d 75, 80 (2d Cir. 1996). The Second Circuit has defined "adverse action" as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" Gill, 389 F.3d at 381 (citation omitted) (omission in original). This objective test applies even if aplaintiff was not himself subjectively deterred from exercising his rights. Id.; see also Ford v. Palmer, 539 Fed. App'x 5, 7 (2d Cir. 2013) ("The Court must apply the objective test [for First Amendment retaliation] [. . .] even where a particular plaintiff was not himself subjectively deterred; that is, where he continued to file grievances and lawsuits."). Conduct that is de minimis does not give rise to actionable retaliation. Dawes, 239 F.3d at 493. What is de minimis varies according to context. Id. "Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a [retaliatory] action taken against them is considered adverse." Id. at 491 (quoting Thaddeus-X v. Blatter, 175 F.3d 378, 386–87 (6th Cir. 1999) (en banc) (per curiam)). If a retaliatory act against an inmate would not be likely to "chill a person of ordinary firmness from continuing to engage" in a

14

protected activity, "the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." Id. at 493.

A plaintiff can establish a causal connection that suggests retaliatory intent by showing that his protected activity was close in time to the complained-of adverse action. Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2001) (citations omitted). While there is no "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship," Gorman-Bakos v. Cornell Coop. Extn. of Schenectady Cty., 252 F.3d 545, 554 (2d Cir. 2001), "the interval between a protected activity and an adverse action that results in a finding of retaliation is generally no more than several months." Ashok v. Barnhart, 289 F. Supp. 2d 305, 314 (E.D.N.Y. 2003).

### 1. Claim Against N. Doe

Construing the Complaint liberally, Plaintiff alleges that he reported N. Doe to OSI on January 27, 2021 and, on January 28, 2021, N. Doe retaliated against him and reassigned him to D1, where he was assaulted on February 6, 2021. See Compl. at 2–3, 7. As to the first prong of a retaliation claim, Plaintiff's OSI complaints, involving a report of sexual harassment and threats of physical violence, are "tantamount to filing a grievance." Pusepa v. Annucci, No. 17-CV-7954, 2019 WL 720699, at *15 (S.D.N.Y. Feb. 19, 2019) (citation omitted). As to the third prong, Plaintiff alleges that, after the assault, N. Doe stated, "[i]t's probably not a good idea to tell on staff, now is it?" and told Plaintiff that he "should be" afraid. See id. at 3.

Upon review and with due regard for Plaintiff's status as a pro se litigant, the Court finds that Plaintiff's First Amendment retaliation claims against N. Doe survive initial review and require a response. In so ruling, the Court expresses no opinion as to whether this claim can

withstand a properly filed motion to dismiss or for summary judgment.

> 2. *Claims against Brown, Reynolds, Bennett, Fountain, and J. Doe*

Plaintiff claims that Brown, Reynolds, Bennett, Fountain, and J. Doe "participated in the retaliation."[6] See Compl. at 7. As discussed above, a plaintiff must plead facts suggesting a connection between the defendant and the protected conduct. See Flood v. Cappelli, No. 18-CV-3897, 2019 WL 3778736, at *8 (S.D.N.Y. Aug. 12, 2019). In this regard, "[a]s a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant." Hare v. Hayden, 09-CV-3135, 2011 WL 1453789, at *4 (S.D.N.Y. Apr. 14, 2011) (citing Wright v. Goord, 554 F.3d 255, 274 (2d Cir. 2009)). Here, the Complaint lacks facts suggesting that Brown, Reynolds, Bennett, Fountain or J. Doe was identified in the OSI complaint. Moreover, Plaintiff has not plead that these Defendants were aware of the complaint. Without facts including how and when these Defendants were aware of the OSI complaint or why they would be motivated to retaliate against Plaintiff as a result of the complaint, Plaintiff's retaliation claims against Brown, Reynolds, Bennett, Fountain, and J. Doe are dismissed without prejudice for failure to state a claim.

**D. Eighth Amendment**

"The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody." Hayes v. N.Y.C. Dept. of Corrs., 84 F.3d 614, 620 (2d Cir. 1996) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)).

> 1. *Inciting Violence*

---

[6] Plaintiff also asserts claims for retaliation against McGuire and Stockton, however, as discussed in Part V(A)(1) above, the claims against McGuire and Stockton are dismissed for failure to plead personal involvement.

Allegations that a correctional officer made statements intending to incite others to attack an inmate may state a claim under the Eighth Amendment. See Phillips v. Cortland Cty. Sheriff's Dep't, No. 13-CV-00955, 2013 WL 5464908, at *4 (N.D.N.Y. Sept. 30, 2013) (citing Young v. Coughlin, No. 93-CV-0262, 1998 WL 32518, at * 7 (S.D.N.Y. Jan. 29, 1998)) (holding that correctional officer's "sexually suggestive" comments to the plaintiff in the presence of large number of other inmates may state an Eighth Amendment claim if they incited other inmates to assault the plaintiff).

Here, Plaintiff alleges that Brown violated his Eighth Amendment rights because he attempted to incite unidentified inmates to assault Plaintiff. See Compl. at 7. Plaintiff claims that he was told by other unidentified inmates that Brown told them to "beat his ass." See id. at 5; Dkt. No. 5–2 at 16. Plaintiff does not allege that he was actually attacked as a result of Brown's alleged statements. Accordingly, Plaintiff's Eighth Amendment claims against Brown related to inciting violence are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 2. Failure to Protect

Under the Eighth Amendment, prison officials are required to take reasonable measures to guarantee the safety of inmates and to protect them from known harm. See Farmer, 511 U.S. at 832–33. In Farmer, the Supreme Court set out a two-pronged test that determines when failure to protect a prison inmate from assault rises to the level of a constitutional violation. First, the prisoner must have been "incarcerated under conditions posing a substantial risk of serious harm." Id. at 834. Second, the prison official must have shown "deliberate indifference" to the prisoner's safety. Id. Deliberate indifference exists when "the official knows of and disregards an

17

excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; Hines v. Lacy, 189 F.3d 460 (2d Cir. 1999).

### a. Claims Against N. Doe

Construing the Complaint liberally, Plaintiff claims that N. Doe failed to protect him from the February 2021 assault. See Compl. at 8. The Amended Complaint however, lacks any facts establishing that Plaintiff was threatened or involved in prior altercations with the inmates involved in that incident. Nor are there any facts indicating that N. Doe knew of a history of attacks "similar enough to the attack he suffered that remedial actions would have prevented that attack." See Paris v. New York State Dep't of Corrs. Servs., 947 F.Supp.2d 354, 363 (S.D.N.Y. 2013) (holding that the plaintiff cannot assert a claim against the defendant for failure-to-protect from a surprise attack). Therefore, Plaintiff has failed to plead that N. Doe was deliberately indifferent for failing to protect Plaintiff from the risk of harm in violation of his Eighth Amendment rights. Accordingly, Plaintiff's Eighth Amendment claims against N. Doe are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### b. Claims Against Fenton

Plaintiff alleges that Fenton violated his Eighth Amendment rights because he failed to protect him from the March 2021 assault. Specifically, Plaintiff alleges he was assaulted after he notified Fenton that an inmate propositioned him for sex, provided a copy of the letter from the inmate, and asked for a transfer. However, Plaintiff does not claim that he was assaulted by that inmate. Rather, Plaintiff was allegedly assaulted by Johnson, a member of the "Bloods" gang.

18

While Plaintiff claims he was involved in an altercation with "Bloods" members in February 2021, the Complaint lacks facts suggesting that Plaintiff was threatened by Johnson, involved in prior altercations with Johnson, or facts from which it could be inferred that Fenton was aware of the February 2021 altercation or had any reason to suspect that Johnson would attack Plaintiff. Thus, to the extent that Plaintiff claims Fenton should have prevented the attack by Johnson, Plaintiff's Eighth Amendment claim is not viable as presently pled because the Complaint does not suggest that Fenton knew of a particular risk to Plaintiff's safety or was deliberately indifferent for failing to protect Plaintiff. Accordingly, Plaintiff's Eighth Amendment claims against Fenton are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### E. Conspiracy

Plaintiff claims that Defendants conspired to retaliate against him, incite violence against him, and to "discredit [his] statements in an effort to protect their colleagues." See Compl. at 7–8. A conspiracy claim under § 1983 must allege that: (1) an agreement existed between two or more state actors to inflict an unconstitutional injury on plaintiff and (2) an overt act was committed in furtherance of that goal. Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 324–25 (2d Cir. 2002). Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed. Id. at 325.

Plaintiff does not assert any facts giving rise to a conspiracy, but instead makes conclusory statements that Defendants conspired with each other. Plaintiff's conclusory allegations do not support a "meeting of the minds" or a plausible conspiracy claim involving any of the Defendants. "[A]lthough a plaintiff does not need to provide detailed factual

allegations, the allegations in the complaint must be enough to raise a right to relief above the speculative level." Dorsey v. Fisher, No. 09-CV-1011, 2009 WL 4985421, at *3 (N.D.N.Y. Dec. 15, 2009) (citations omitted); see Webb v. Goord, 340 F.3d 105, 110-11 (2d Cir. 2003) (to maintain a conspiracy action, the plaintiff "must provide some factual basis supporting a meeting of the minds").

Accordingly, Plaintiff's conspiracy claims are dismissed without prejudice for failure to state a claim. See Gallop v. Cheney, 642 F.3d 364, 369 (2d Cir. 2011).

**F. Claims Against Annucci and Reardon**

Plaintiff alleges that Annucci was "responsible for the actions of those underneath him, and those underneath them" and that Annucci "is [ ] fully culpable for creating, establishing, and promoting a culture of violation and extortion against inmates who identify as LGBTQ and/or are incarcerated for sex offenses." See Compl. at 8. These statements merely demonstrate that Annucci played a supervisory role and are far from sufficient to demonstrate personal involvement. See Tangreti, 983 F.3d at 618.

With respect to Reardon, Plaintiff claims he sent a letter to the superintendent asking about the status of his grievance and asked "if the inmate who broke my jaw, Johnson 20A1944, received and was found guilty of a misbehavior report and if criminal charges were filed against him." Dkt. No. 5-2 at 19. Even before Tangreti, receipt by a supervisory official of a letter from an inmate, without more, was insufficient to establish personal involvement in a § 1983 constitutional claim. Jones v. Annucci, No. 16-CV-3516, 2018 WL 910594, at *11–12 (S.D.N.Y. Feb. 14, 2018). Thus, assuming Reardon was aware of Plaintiff's grievance, his "mere knowledge" is insufficient to adequately plead a Section 1983 violation. See Fernandez v.

Superintendent, Downstate Corr. Facility, No. 20-CV-10287, 2022 WL 443646, at *3 (S.D.N.Y. Feb. 14, 2022) (dismissing constitutional claims against the Superintendent for failure to act on prior complaints regarding medical examinations based upon denial of appeals of grievances regarding the issue) (citing *inter alia,* Tangreti, 983 F.3d at 616).

Accordingly, because the Complaint alleges no facts that give rise to a cognizable constitutional claim against Annucci and Reardon, the claims against them are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### G. Equal Protection

The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under the law. U.S. Const. Amend. XIV, § 1. Essential to that protection is the guarantee that similarly situated persons be treated equally. See City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). "In order to establish an equal protection violation, the plaintiffs must show that they were treated differently than other people in similar circumstances and must establish that such unequal treatment was the result of intentional and purposeful discrimination." Myers v. Barrett, No. 95-CV-1534, 1997 WL 151770, at *3 (N.D.N.Y. Mar. 28, 1997). In addition, a valid equal protection claim may be brought by a "class of one," "where the plaintiff alleges that she [or he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

Here, Plaintiff fails to allege any facts to suggest how he was treated differently than a similarly situated inmate. Plaintiff's vague and conclusory allegations are insufficient to

plausibly suggest an equal protection violation. See Byng v. Delta Recovery Servs., LLC,

No. 13-CV-733, 2013 WL 3897485, at *15 n.5 (N.D.N.Y. July 29, 2013) (holding that inmate

held at Attica Correctional Facility alleged no facts in the complaint to indicate he was similarly

situated to any other inmate or that such inmate(s) was treated differently than he was), aff'd, 568

F. App'x 65 (2d Cir. 2014) (summary order).

Accordingly, Plaintiff's Fourteenth Amendment Equal Protection claims are dismissed

without prejudice for failure to state a claim upon which relief may be granted.

**H. Service Issues**

Despite finding that a response to the Complaint is required, there is an impediment to

service. The only remaining defendant is N. Doe, whose identity is not presently known. Under

normal circumstances, when a pro se plaintiff includes Doe defendants, together with named

defendants, the Complaint is served upon the named defendants and the plaintiff pursues

discovery to identify the Doe defendants. In this case, however, the only remaining defendant has

not been identified by name.

In light of the foregoing, the Clerk of Court shall send a copy of the Complaint and this

Decision and Order to the Office of the Attorney General. Pursuant to Valentin v. Dinkins, 121

F.3d 72 (2d. Cir. 1997) (per curiam), the Court requests that the Attorney General's Office

attempt to ascertain the full name of the defendant.[7] The Attorney General's Office is also

requested, to the extent that it is able to identify the defendant, to provide the address where the

defendant can currently be served. The Attorney General need not undertake to defend or

---

[7]  In Valentin, 121 F.3d at 75–76, the Second Circuit held that district courts must assist
pro se incarcerated litigants with their inquiry into the identities of unknown defendants.

22

indemnify this individual at this juncture. This order merely provides a means by which Plaintiff

may name and properly serve the defendant as instructed by the Second Circuit in Valentin.

V.      **MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**

On December 29, 2021, Plaintiff filed a motion for a preliminary injunction. Dkt. No. 5.

On March 24, 2022, Plaintiff "move[d] to withdraw the application for a temporary restraining

order" in this action. Dkt. No. 11-1. Accordingly, Plaintiff's motion (Dkt. No. 5) is denied as

moot.

VI.     **MOTION FOR COUNSEL**

Plaintiff requests appointment of counsel to represent him in this matter. Dkt. No. 4.

There is no right to appointment of counsel in civil matters. Burgos v. Hopkins, 14 F.3d 787, 789

(2d Cir. 1994). Title 28 of United States Code Section 1915 specifically provides that a court

may request an attorney to represent any person "unable to afford counsel." 28 U.S.C. §

1915(e)(1). Appointment of counsel must be done carefully in order to preserve the "precious

commodity" of volunteer lawyers for those litigants who truly need a lawyer's assistance. Cooper

v. A. Sargenti, Inc., 877 F.2d 170, 172–73 (2d Cir. 1989).

In Terminate Control Corp. v. Horowitz, 28 F.3d 1335 (2d Cir. 1994), the Second

Circuit reiterated the factors that a court must consider in ruling upon such a motion. In

deciding whether to appoint counsel, the court should first determine whether the indigent's

position seems likely to be of substance. If the claim meets this threshold requirement, the

court should then consider a number of other factors in making its determination. See id. at

1341 (quoting Hodge v. Police Officers, 802 F.2d 58, 61 (2d Cir. 1986)). Among these are

> [t]he indigent's ability to investigate the crucial facts, whether
> conflicting evidence implicating the need for cross-examination will

be the major proof presented to the fact finder, the indigent's ability
to present the case, the complexity of the legal issues, and any
special reason . . . why appointment of counsel would be more likely
to lead to a just determination.

Hodge, 802 F.2d at 61. None of these factors are controlling, however, and each case

should be decided on its own facts. See id.

Defendant has not yet responded to the allegations contained in the Complaint, and the

only facts upon which the Court may base its decision as to whether this lawsuit is of substance

are those portions of the Complaint where Plaintiff states the facts surrounding his claim. Where

a plaintiff does not provide a court with evidence, as opposed to mere allegations, relating to his

or her claims, the plaintiff does not meet the first requirement imposed by the Second Circuit

with respect to applications seeking appointment of pro bono counsel. See Harmon v. Runyon,

No. 96-CV-6080, 1997 WL 118379, at *1 (S.D.N.Y. Mar. 17, 1997) (refusing to grant pro bono

counsel because "plaintiff has not met the threshold requirement set forth in Hodge. Plaintiff has

presented no evidence whatever to support her claims.").

Even if the Court were to assume, for purposes of this motion, that Plaintiff's position

seems likely to be of substance, the relevant factors weigh decidedly against granting Plaintiff's

motion at this time. For example: (1) the case does not yet present novel or complex issues; (2) it

appears to the Court as though, to date, Plaintiff has been able to effectively litigate this action;

and (3) if this case survives any dispositive motions filed by Defendants, it is highly probable

that this Court will appoint trial counsel at the final pretrial conference.

The Court is not aware of any special reason why appointment of counsel in this case is

warranted at this time and is mindful, as the Second Circuit has admonished that it must be, of

the scarcity of volunteer lawyers and the need to allocate that resource with the utmost care. See

24

Cooper, 877 F.2d at 172 (noting that "[v]olunteer lawyer time is a precious commodity."). As discussed above, Plaintiff provided a detailed Complaint with facts sufficient to survive this Court's sua sponte review. Thus, Plaintiff's motion for the appointment of counsel is denied without prejudice. After Defendant has responded to the allegations in the Complaint, and the parties have undertaken discovery, Plaintiff may seek appointment of counsel and the Court may be better able to determine whether such appointment is warranted.

## VII.   CONCLUSION

Accordingly, it is hereby

**ORDERED**, that Plaintiff's in forma pauperis application (Dkt. No. 11) is **GRANTED**;[8] and it is further

**ORDERED**, that the Clerk provide the Superintendent of the facility, designated by Plaintiff as his current location, with a copy of Plaintiff's inmate authorization form, and notify the official that this action has been filed and that Plaintiff is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915[9]; and it is further

**ORDERED**, that the Clerk of the Court provide a copy of Plaintiff's inmate authorization form to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED**, that Plaintiff's motion (Dkt. No. 16) to add facts and defendants is

---

[8]  Plaintiff should note that, although the Court has granted his application to proceed in forma pauperis, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

[9]  "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." Cash v. Bernstein, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010) (citing 28 U.S.C. § 1915(b) and Harris v. City of New York, 607 F.3d 18, 21 (2d Cir. 2010)).

**DENIED without prejudice to renew**; and it is further

ORDERED, that the Section 1983 claims for monetary damages against Defendants in their official capacity are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b); and it is further

ORDERED, that the following claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted: (1) claims against McGuire and Stockton; (2) claims against Johnson; (3) First Amendment retaliation claims against Brown, Reynolds, Bennett, Fountain, and J. Doe; (4) Eighth Amendment claims related to inciting violence; (5) Eighth Amendment failure-to-protect claims; (7) conspiracy claims; (8) claims against Annucci and Reardon; and (8) equal protection claims;[10] and it is further

ORDERED, that Plaintiff's First Amendment retaliation claims against N. Doe survive the Court's sua sponte review under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) and require a response; and it is further

ORDERED, that McGuire, Stockton, Johnson, Brown, Reynolds, Bennett, Fountain, J. Doe, Deusler, Fenton, Reardon, and Annucci are **DISMISSED** as defendants herein; and it is further

ORDERED, that the Office of the Attorney General is hereby requested to produce the information specified above, to the extent that it can, regarding the identity of the Defendant within **thirty (30) days** of the filing date of this Decision and Order. The information should be

---

[10] If Plaintiff wishes to pursue any claim dismissed without prejudice by filing an amended complaint, he is advised to that, if accepted for filing, any amended complaint will entirely replace the original complaint and incorporation of prior claims is not permitted.

sent to the Clerk of the Court for the Northern District of New York along with a copy of this Decision and Order along with a copy of this Decision and Order, as well as to Plaintiff at his address of record. Once this information is provided, the Clerk shall return this file to the Court for further review; and it is further

    **ORDERED**, that Plaintiff's motion for a preliminary injunction (Dkt. No. 5) is **DENIED as moot**; and it is further

    **ORDERED**, that Plaintiff's motion for counsel (Dkt. No. 4) is **DENIED**; and it is further

    **ORDERED**, that the Clerk of the Court shall mail a copy of this Decision and Order and the Complaint to the Office of the  New York State Attorney General; and it is further

    **ORDERED**, that the Clerk of the Court shall serve a copy of this Decision and Order and a copy of the Complaint[11] on Plaintiff in accordance with the Local Rules.


DATED:    June 6, 2022
          Albany, New York

          LAWRENCE E. KAHN
          United States District Judge

---

[11]  Plaintiff requests a courtesy copy of the Complaint from the Court. See Dkt. No. 11-1 at 1.

27