UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MICHAEL ANDERSON BALENTINE,

                              Plaintiff,

        -against-                                    9:21-CV-1383 (LEK/CFH)

NICK DOE,

                              Defendant.

_____

**MEMORANDUM-DECISION AND ORDER**

## I.      INTRODUCTION

Plaintiff Michael Anderson Balentine commenced this civil rights action pursuant to 42

U.S.C. § 1983 ("Section 1983"). Dkt. No. 1 ("Complaint"). The Complaint alleged violations of

Plaintiff's constitutional rights while he was in the custody of the New York State Department of

Corrections and Community Supervision ("DOCCS") at Marcy Correctional Facility ("Marcy

C.F."). See generally Compl. Plaintiff did not pay the statutory filing fee and sought leave to

proceed in forma pauperis ("IFP"). Dkt. No. 2. On January 3, 2022, the case was

administratively closed because Plaintiff failed to submit a complete IFP application. Dkt. No. 6.

On March 24, 2022, upon receipt of Plaintiff's second IFP application, the case was reopened.

Dkt. Nos. 11, 13. On May 11, 2022, Plaintiff filed a motion to "add facts, defendants, and

exhibits." Dkt. No. 16.

In a Memorandum-Decision and Order filed on June 7, 2022 (the "June Order"), the

Court granted Plaintiff's IFP application, denied Plaintiff's motion to add facts, defendants, and

exhibits, and reviewed the sufficiency of the complaint in accordance with 28 U.S.C. §

1915(e)(2)(B) and 28 U.S.C. § 1915A(b)(1). Dkt. No. 17. The Court dismissed the following

claims without prejudice for failure to state a claim upon which relief may be granted: (1) claims

against Glenn McGuire and Mr. Stockton; (2) claims against Inmate Johnson; (3) First

Amendment retaliation claims against Sergeant Brown; Sergeant F. Reynolds; Sergeant Bennett;

Sergeant Patrick Fountain; and Sergeant John Doe; (4) Eighth Amendment Claims related to

inciting violence; (5) Eighth Amendment failure-to-protect claims; (6) conspiracy claims; (7)

claims against Commissioner Anthony J. Annucci and Superintendent Patrick Reardon; and (8)

various equal protection claims. Id. at 26. The Court found that Plaintiff's First Amendment

retaliation claim against defendant Nick Doe survived review and required a response. Id.

However, because Nick Doe was the only remaining defendant, the Court directed the New York

State Attorney General's Office to ascertain his full name and provide the address where he

could be served. Id. at 22. On June 23, 2022, the Attorney General's Office submitted a response

to the June Order and identified Nick Doe as Nick Anzalone. Dkt. No. 20.

Now before the Court are Plaintiff's motion for reconsideration, motion for copies, and

Amended Complaint. Dkt. No. 19 and Dkt. No. 21 ("Amended Complaint").

## II.    MOTION TO RECONSIDER

"The standard for granting a motion for reconsideration [pursuant to Rule 54(b)] 'is strict,

and reconsideration will generally be denied unless the moving party can point to controlling

decisions or data that the court overlooked—matters, in other words, that might reasonably be

expected to alter the conclusion reached by the court.'" Brooks v. Hogan, No. 14-CV-0477, 2017

U.S. Dist. LEXIS 37439, at *3 (N.D.N.Y. Mar. 15, 2017) (Kahn, J.) (quoting Shrader v. CSX

Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)). "Motions under Rule 54(b) are subject to the

law-of-the-case doctrine." Kaufman v. Columbia Mem. Hosp., No. 11-CV-667, 2014 U.S. Dist.

LEXIS 83344, at *6 (N.D.N.Y. June 19, 2014). "This means that the decisions referenced in

Rule 54(b) 'may not usually be changed unless there is an intervening change of controlling law,

the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice.'" Id. (cleaned up) (quoting Off. Comm. of Unsecured Creditors of the Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 167 (2d Cir. 2003)).

Plaintiff argues that the Court improperly dismissed his First Amendment retaliation claim against Brown and his Eighth Amendment claim against Fenton. Dkt. No. 19 at 1. However, Plaintiff filed his motion to reconsider on June 13, 2022, Dkt. No. 19, and subsequently filed an amended complaint, Dkt. No. 21, on June 27, 2022. By filing an amended complaint, Plaintiff replaced the original complaint. Pettaway v. Nat'l Recovery Sols., LLC, 955 F.3d 299, 303 (2d Cir. 2020) ("[A]n amended pleading ordinarily supersedes the original and renders it of no legal effect.") (quoting In re Crysen/Montenay Energy Co., 226 F.2d 160, 162 (2d Cir. 2000)). As a result, when a plaintiff files an amended complaint after filing a motion for reconsideration, the reconsideration motion is mooted. See Meserole v. Sony Corp. of Am., No. 08-CV-8987, 2009 WL 2001451, at *1 (S.D.N.Y. July 9, 2009) (denying the plaintiffs' reconsideration motion as moot because if the court granted the plaintiffs' motion to reconsider after the filing of an amended complaint, two complaints would be pending); see also Greenblatt v. Gluck, 265 F. Supp. 2d 346, 351 (S.D.N.Y. 2003) ("Even if the motion were to be granted, [the plaintiff] has already filed a new complaint, such that the prior complaint could not in any case be reinstated."). Thus, Plaintiff's motion to reconsider is denied as moot.

## III.    MOTION FOR COPIES

After Plaintiff filed his first complaint, he submitted a motion, with citations to two civil action numbers, seeking to add facts, defendants, and exhibits related to his confinement at Mid-State Correctional Facility ("Mid-State C.F."). Dkt. No. 16. The Court denied the motion without prejudice and declined to accept the submission as an amendment or supplement to the complaint

3

because Plaintiff did not comply with the Court's Local Rules and did not include a caption on his submission indicating which action he intended to amend or supplement. Dkt. No. 17 at 2. Now, Plaintiff "clarifies that he intended the motion to correspond to the within action and moves for a courtesy copy" of the submission. Dkt. No. 19 at 1.

Courts in this District have granted inmates' requests for copies of their submissions when inmates proceed pro se. See, e.g., Hester v. Fredenburgh, No. 9:21-CV-1017, 2022 WL 457951, at *2 (N.D.N.Y. Feb. 14, 2022) ("In light of plaintiff's pro se incarcerated status, the Clerk is respectfully directed to provide plaintiff a courtesy copy of his amended complaint and attached exhibits for his reference . . . ."). Therefore, Plaintiff's request for a courtesy copy of the exhibits attached at Dkt. No. 16 is granted. The Clerk is respectfully directed to provide Plaintiff a courtesy copy of his submissions contained in Dkt. No. 16 of this action, and a copy of the Docket.

## IV.   REVIEW OF AMENDED COMPLAINT

### A.  Legal Standard

The legal standard governing the dismissal of a pleading for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e) and 1915A(b) was discussed at length in the June Order, familiarity with which is assumed. Dkt. No. 17 at 4–6.

### B.  Summary of Amended Complaint

In the June Order, the Court noted that Plaintiff submitted 58 pages of documents in connection with a separate filing that were relevant to the incident described in the complaint. Dkt. No. 17 at 7 n.4. The Court considered the documents in the context of § 1915 review and directed the Clerk of the Court to attach the documents (Dkt. No. 5-2) to Plaintiff's original complaint. See id. Plaintiff did not attach the exhibits to the amended complaint. "Although it is

4

well settled that an amended complaint supersedes a prior complaint in its entirety, it is clear to

the court that Plaintiff intended to attach the exhibits to his amended complaint." Wellington v.

Langendorf, No. 12-CV-1019, 2013 WL 3753978, at *3 (N.D.N.Y. July 15, 2013). To require

Plaintiff to file an amended complaint that includes the original exhibits is "an unnecessary

procedural hoop that would waste resources and delay resolution of this action." Alexander v.

United States, No. 13-CV-678, 2013 WL 4014539, at *4 (N.D. Cal. Aug. 5, 2013). Because

Plaintiff is pro se, the Court will consider the documentation attached to the original complaint as

incorporated by reference in the Amended Complaint.

In the Amended Complaint, Plaintiff substitutes defendant Nick Anzalone

in place of Nick Doe.[1] Am. Compl. at 1. Plaintiff also includes claims against previously

dismissed defendants Fountain, Brown, Bennett, Deusler, Reynolds, Fenton, and Stockton.[2] See

id.

According to Plaintiff, at some point in January 2021, he was transferred from Five

Points Correctional Facility ("Five Points") to Marcy C.F. and assigned to the J1 Unit. Id. at 2.

On or around January 27, 2021, while Plaintiff was in the package room, Anzalone sexually

harassed and threatened Plaintiff, telling Plaintiff that he "better hope he doesn't see him out

there." Id. Plaintiff returned to the J1 Unit and called the Office of Special Investigation ("OSI")

to report the incident. Id.

---

[1] The Clerk of the Court is directed to substitute "Nick Anzalone" into this action in place of
"Nick Doe."

[2] Annucci, Reardon, McGuire, Sgt. Doe, and Johnson are not included in the caption of the
amended complaint or in the list of parties. Am. Compl. at 1.

On January 28, 2021, Plaintiff was reassigned to the D1 unit. Am. Compl. at 2. Immediately upon entering the unit, Plaintiff was approached by Inmate Reed, an active member of the Blood Gang ("The Bloods"). Id. Inmate Reed told Plaintiff that because he was a "Rapo," Plaintiff must clean for the gang, and Inmate Reed threatened to assault him if he refused. Id.

On February 3, 2021, Plaintiff was interviewed by an unidentified OSI sergeant regarding his OSI complaint. Id. The sergeant indicated that he "spoke" with Anzalone and stated, "some things were said by [Anzalone] that probly [sic] shouldn'tah [sic] been said." Id. However, because Anzalone had not harassed or threatened Plaintiff any further, the case was closed. Id.

On February 6, 2021, Plaintiff was assaulted by Reed and two other inmates, who were members of the Bloods. Am. Compl. at 3. Plaintiff reported the incident to the Unit Officer and asked to be transferred to a different housing unit. Id. Desuler responded to the scene and transported Plaintiff to the infirmary. Id. During the transport, Desuler called Plaintiff "a nasty rapo." Id. Desuler later "shared the details of the incident" with Anzalone, Brown, and Reynolds. Id.

When Plaintiff arrived at the infirmary, Reynolds directed him into an examination room and photographed Plaintiff's injuries. Id. Reynolds then left the room and called out, "Hey Nick! We got your friend up here!" Id. Anzalone entered the room and stated, "Hi Friend! It's probly [sic] not a good idea to tell on staff[.]" Id. Plaintiff responded that he was "scared of him" and Anzalone replied, "[you] should be." Id. Anzalone "made a quick, false movement" to make Plaintiff think he was going to strike him. Id. Plaintiff "flinched" and Anzalone laughed and left the room. Id. Plaintiff was then reassigned to the "J1 Unit." Id.

As a result of the February 6, 2021, altercation, Desuler issued a misbehavior report charging Plaintiff with fighting and violent conduct. Dkt. No. 5-2 at 28. On February 10, 2021,

Plaintiff attended a Tier II disciplinary hearing related to the misbehavior report. Id. at 29. Plaintiff was found guilty of the charges and sentenced to 26 days in keep lock. Id. at 30. The presiding officer told Plaintiff that he would "order a 'hold' on [him] in the J1 housing unit for [his] safety." Am. Compl. at 3. However, on February 27, 2021, Plaintiff was reassigned to the H2 unit. Id.

On two occasions between February 27, 2021, and March 11, 2021, Brown entered the unit and saw Plaintiff cleaning the bathroom. Id. Brown stated, "Hey Friend! Now that's what I like to see!" Id.

On March 11, 2021, Plaintiff was reassigned to the F2 unit. Id. The same day, an unidentified inmate gave Plaintiff a sexually explicit note. Id. at 3–4. On March 12, 2021, the same inmate exposed himself to Plaintiff in the bathroom. Id. at 4. Immediately thereafter, Plaintiff wrote a letter to Fenton and reported the incidents and provided Fenton with the sexually explicit note. Id. One hour later, Fenton assured Plaintiff that he would be moved from the F2 unit "that same day." Id. However, Fenton failed to contact his superior officer and Plaintiff was not transferred.

At about 10:00 PM the same day, Plaintiff was approached by Inmate Johnson, a member of the Bloods, who told Plaintiff that he was "required to do dishes and other chores" for the gang because Plaintiff was a "Rapo." Am. Compl. at 4. Plaintiff refused, and as a result, Johnson "attacked and savagely beat" Plaintiff causing him to "bleed[] profusely" from his mouth and nose. Id. Plaintiff reported the incident, but Reynolds called Plaintiff "a liar" and said he "would just bring [Plaintiff] right back to get [his] ass kicked again." On Reynolds's orders, Plaintiff was reassigned to D1. Id. at 5.

7

On March 13, 2021, Reynolds issued a misbehavior report charging Plaintiff with fighting, violent conduct, and creating a disturbance. Dkt. No. 5-2 at 34.

On March 14, 2021, Reynolds, Brown, and Desuler entered D1 for "count." Am. Compl. at 5; Dkt. No. 5-2 at 16. While all the inmates were standing in their cubes, Brown stopped in front of Plaintiff's cube and stated in a loud voice, "Hi Friend! How are you doing today? Great! Hey everybody, I want you all to know that my Friend here is really good at doing dishes! So, if any of you need your dishes done, bring them to my Friend[.]" Am. Compl. at 5.

After Brown, Reynolds, and Desuler left the unit, Stockton exclaimed, "what the fuck did you do to piss Brown off?" Id. Several inmates stated that Brown wanted them to "beat [Plaintiff's] ass." Id.

On March 15, 2021, Plaintiff was reassigned to F2. Id. On March 16, 2021, Plaintiff was presented with the option to move to E2 or Voluntary Protective Custody. Id. Plaintiff chose to move to E2. Id.

On March 23, 2021, Fountain called Plaintiff to the sergeant's office. Id. at 6. On his way to the office, Anzalone asked Plaintiff if "everyone in E2 was leaving [him] alone." Id. After Plaintiff replied that they were, Anzalone threatened Plaintiff by stating, "Well, we'll have to see what we can do to change that for you!" Id.

On March 24, 2021, Fountain issued an Involuntary Protective Custody Recommendation and stated, "Inmate Balentine is now attempting to change his story" regarding the March attack. Dkt. No. 5-2 at 38. Fountain claimed Plaintiff was initially "uncooperative," but now identified the other inmate and "seek[s] criminal and civil charges." Id. Fountain noted, "I do not find this to be credible, however, by doing (sic) I feel he put his safety here at Marcy in jeopardy." Id.

Construing the Amended Complaint liberally, Plaintiff asserts the following claims: (1) retaliation claims arising under the First Amendment; (2) failure to protect claims arising under the Eighth Amendment; (3) conspiracy claims related to retaliation and inciting violence against Plaintiff; and (4) various state law claims. See generally Am. Compl. Plaintiff seeks declaratory relief, injunctive relief, and monetary damages. See id. at 7.

**C. Analysis**

*1. First Amendment Retaliation Claims*

The applicable law relevant to First Amendment retaliation claims was discussed in the June Order, familiarity with which is assumed. Dkt. No. 17 at 13–15.

a.   Claims Against Anzalone

As a result of the review of the original complaint, the Court held that a response to Plaintiff's retaliation claim was required from Nick Doe, now identified as Anzalone. The claims are reasserted and realleged in the Amended Complaint and thus, survive review as well.

b.   Claims Against Desuler, Brown, Reynolds, and Fountain

In the June Order, the Court found that Plaintiff's OSI complaint was "tantamount to filing a grievance." Dkt. No. 17 at 15. However, the Court concluded that the retaliation claims against Desuler, Brown, Reynolds, Bennett and Fountain were subject to dismissal because:

> [T]he Complaint lacks facts suggesting that Brown, Reynolds, Bennett, Fountain or J. Doe was identified in the OSI complaint. Moreover, Plaintiff has not plead that these Defendants were aware of the complaint. Without facts including how and when these Defendants were aware of the OSI complaint or why they would be motivated to retaliate against Plaintiff as a result of the complaint, Plaintiff's retaliation claims against Brown, Reynolds, Bennett, Fountain, and J. Doe are dismissed without prejudice for failure to state a claim.

Dkt. No. 17 at 16.

9

Construing the Amended Complaint liberally, Plaintiff alleges that Brown, Reynolds, and Deusler were motivated to retaliate against him because they are "closely associated and have ongoing personal friendships with each other" and Anzalone. Am Compl. at 1. Plaintiff alleges that Anzalone, Brown, Reynolds, and Desuler are "actively engaged in each other's personal and professional lives both inside and outside of the work environment." Id. At this juncture, considering the temporal proximity between Plaintiff's OSI complaint and the alleged adverse actions (i.e., threats and misbehavior reports) and Plaintiff's allegations related to retaliatory motive, the Court finds that Plaintiff's First Amendment retaliation claims against Brown, Reynolds, and Desuler survive review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss.

A different conclusion, however, is reached with respect to Plaintiff's retaliation claim against Fountain. Plaintiff has not pleaded any facts plausibly suggesting that Fountain was motivated to retaliate against Plaintiff due to his complaints against Anzalone. See generally Am. Compl. For the reason set forth in the June Order, Plaintiff's First Amendment retaliation claim against Fountain is dismissed. See Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983) ("[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone.").

### 2. Eighth Amendment Failure to Protect

#### a. Brown

Plaintiff alleges that, on two occasions, between February 27, 2021, and March 11, 2021, Brown entered the bathroom in the H2 unit and intentionally and "loudly" referred to Plaintiff as "friend." Am Compl. at 3. Plaintiff claims other inmates assume that a "friend" of an officer is a "rat." Id. Plaintiff also points out that shortly after his jaw was broken by Johnson for refusing to

10

do dishes for the Bloods, Brown announced in front of the entire D1 housing unit the following: "Hey everybody, I want you all to know that my Friend here is really good at doing dishes! So, if any of you need your dishes done, bring them to my Friend here because he's got that special Palmolive hand." Id. at 5. Construing the Amended Complaint liberally, Plaintiff asserts that Brown's statements posed a substantial risk of harm to Plaintiff in light of the beating he endured from Johnson, and thus Plaintiff presents a failure to protect claim, as discussed in further detail below.

Under the Eighth Amendment, prison officials have a duty "to protect inmates from violence at the hands of other inmates." Montero v. Cruise, 153 F. Supp. 2d 368, 377–78 (S.D.N.Y. 2001) (quoting Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997)). "The failure to do so violates a prisoner's rights, whether or not an attack actually occurs, and if it does occur, whether or not the injuries suffered in an attack are serious." Hesiler v. Kralik, 981 F. Supp. 830, 837 (S.D.N.Y. 1997). The first prong of the Eighth Amendment analysis asks whether the alleged constitutional deprivation is "sufficiently serious." Wilson v. Seiter, 501 U.S. 294, 298 (1991). Moreover, "[i]n assessing whether the risk of an inmate's violence against other inmates is 'sufficiently serious,' to trigger constitutional protection, the focus of inquiry must be, not the extent of the physical injuries sustained in an attack, but rather the existence of a 'substantial risk of serious harm.'" Id. (quoting Wilson, 501 U.S. at 298). The second prong asks whether an official acted with a "sufficiently culpable state of mind," which is a subjective analysis. Wilson, 501 U.S. at 298). "Where . . . no legitimate law enforcement or penological purpose can be inferred from the defendant's alleged conduct, the harassment itself may also be sufficient evidence of a malicious and sadistic state of mind." Montero, 153 F. Supp. 2d at 377 (citing Hudson v. McMillan, 503 U.S. 1, 6–7 (1992)).

11

Here, the Court finds that Brown's public statement to several inmates that Plaintiff is "special" at washing dishes shortly after Plaintiff was hospitalized for refusing to wash other inmates' dishes may have posed a substantial risk of harm to Plaintiff. In particular, the temporal proximity between Plaintiff's beating, Brown's statement, and the corroborating information from other inmates that Brown wanted inmates to "beat [Plaintiff's] ass," Am. Compl. at 5, Plaintiff's allegations make a colorable showing that the first prong of the Eighth Amendment is met. Additionally, because Brown's "alleged harassment" presented no "penological purpose," Montero v. Cruise, 153 F. Supp. at 377 (quoting Fischl, 128 F.2d at 55), the Court "infer[s]" Plaintiff has plead facts plausibly showing Brown's "culpable state of mind" for the subjective prong analysis, Wilson, 501 U.S. at 298, such that a response is required regarding Brown's public statement during "Count" about dish washing that occurred after Plaintiff was beaten up by Johnson. Accordingly, Plaintiff's failure to protect claim against Brown survives review. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss.

b. Anzalone

In the June Order, the Court concluded that Plaintiff failed to plead a failure to protect claim on the subjective prong because Plaintiff failed to establish facts that he was threatened or involved in prior altercations with the inmates who assaulted him in February of 2021, such that Anzalone should have been on notice to protect Plaintiff. Dkt. No. 17 at 17.

In Plaintiff's Amended Complaint, he has identified Reed as one of the inmates who assaulted him, but Plaintiff has not presented any new facts to plausibly suggest that Plaintiff was involved in prior altercations with members of the Bloods or facts to infer that Anzalone was aware of any prior such altercations.

12

Accordingly for the reasons set forth in the June Order, Plaintiff's Eighth Amendment claim against Anzalone is dismissed.

### c. Fenton

Plaintiff claims that Fenton failed to protect him from the March 2021 assault. In the June Order, the Court dismissed the Eighth Amendment claim against Fenton reasoning that while Fenton was aware that another inmate propositioned Plaintiff for sex, Plaintiff was not assaulted by that inmate; instead, he was allegedly assaulted by Johnson. Dkt. No. 17 at 18. With respect to that attack, even assuming Plaintiff could satisfy the objective prong of the Eighth Amendment analysis, the Court found:

> [T]he Complaint lacks facts suggesting that Plaintiff was threatened by Johnson, involved in prior altercations with Johnson, or facts from which it could be inferred that Fenton was aware of the February 2021 altercation or had any reason to suspect that Johnson would attack Plaintiff.

Dkt. No. 17 at 19.

In an attempt to revive this claim, Plaintiff alleges that Fenton "was deliberately indifferent to [his] safety by failing to contact Housing Lieutenant McGuire when [Fenton] realized that Fountain and Bennett were not going to move [him.]." Am. Compl. at 6. Plaintiff claims that Fenton was aware of the "sexual threat of rape" and that his "indifference to that threat led directly" to the assault by Johnson. Id. However, even assuming that Plaintiff was confined under conditions posing a risk of harm, the Amended Complaint lacks allegations of fact which suggest that Fenton acted with a sufficiently culpable state of mind by being deliberately indifferent to Plaintiff's health and safety. See generally Am. Compl. Moreover, the Amended Complaint is devoid of allegations suggesting that Fenton had "any history with Plaintiff or reason [of] want[ing him] to be harmed[.]" Molina v. Saraireh, No. 16-CV-3421,

13

2017 WL 5004311, at *3 (S.D.N.Y. Oct. 31, 2017). Accordingly for the reasons set forth above,

Plaintiff's Eighth Amendment claim against Fenton is dismissed.

### 3. Conspiracy

The relevant law regarding conspiracy claims was discussed in the June Order,

familiarity with which is assumed.

In the Amended Complaint, Plaintiff argues that Reynolds's comments to Anzalone and

the use of the word "friend" by "multiple defendants" are evidence of a conspiracy to retaliate

against Plaintiff and to violate Plaintiff's Eighth Amendment rights. Am. Compl. at 21.

A plaintiff's Section 1983 conspiracy claim fails if he is unable to allege the underlying

Section 1983 cause of action. See Droz v. McCadden, 580 F.3d 106, 109 (2d Cir. 2009). Since

"[n]ot every state law tort becomes an actionable constitutional tort under section 1983

because it was committed by a state actor . . . our initial inquiry is whether the alleged

actions, if taken as true, deprived [Plaintiff] of a constitutional right." Bisignano v. Harrison

Cent. Sch. Dist., 113 F. Supp. 2d 591, 595–96 (S.D.N.Y. 2000) (citing Baker v. McCollan, 443

U.S. 137, 146 (1979) and Albright v. Oliver, 510 U.S. 266, 271 (1994)).

As more fully discussed above, Plaintiff has failed to state an Eighth Amendment claim

against any defendant save for Brown. Thus, Plaintiff's conspiracy claims related to Eighth

Amendment violations against each defendant except for Brown are dismissed on this basis. See

Droz, 580 F.3d at 109 (recognizing that a plaintiff's Section 1983 conspiracy claim fails if he is

unable to allege the underlying Section 1983 cause of action).

Plaintiff's conspiracy claim against Brown is dismissed as well. A conspiracy claim

under Section 1983 requires (1) an agreement between two or more state actors to inflict an

unconstitutional injury on a plaintiff and (2) an overt act committed in furtherance of that goal.

See Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 324–25 (2d Cir. 2002). Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed. Id. at 325. Here, while the Court finds that Plaintiff's Eighth Amendment claim against Brown survives review, Plaintiff does not plead facts indicating that Brown made his public statements about Plaintiff's dish washing in concert with any other defendant. See Am. Compl. at 5. Thus, because there is no evidence of an agreement, Plaintiff's conspiracy claim against Brown fails.

A different conclusion is reached, however, with respect to the conspiracy claims related to First Amendment retaliation. In light of Plaintiff's pro se status and construing the pleading liberally, the Court finds that Plaintiff has sufficiently alleged a conspiracy claim against Anzalone, Deusler, Brown, and Reynolds pursuant to Section 1983 to require a response. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

### 4. Claims Against Stockton

In the June Order, the Court dismissed Plaintiff's claims against Stockton because the complaint lacked facts suggesting that Stockton was personally involved in any alleged constitutional violation. Dkt. No. 17 at 11. Plaintiff's new factual allegations in the Amended Complaint related to Stockton do not cure the deficiencies with respect to this claim. See generally Am. Compl. Plaintiff's lone reference to Stockton plainly does not allege any constitutional violations. Am. Compl. at 5. Accordingly, Plaintiff's claims against Stockton are dismissed.

### 5. State Law Claims

In the amended complaint, Plaintiff asserts negligence, intentional infliction of emotional distress ("IIED"), harassment, libel, and defamation claims against "defendants." Am. Compl. at

7. Under 28 U.S.C. § 1367(a), claims "'form part of the same case or controversy'" if these claims, "'derive from a common nucleus of operative fact.'" Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 245 (2d Cir. 2011) (quoting Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 308 (2d Cir. 2004)). Pursuant to § 1367(a), "a federal court has subject-matter jurisdiction over specified state-law claims, which it may (or may not) choose to exercise." Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009). Plaintiff's state law claims arise from his federal claims against Defendants, thus establishing a common nucleus of operating fact.

The Court finds that Plaintiff has pleaded facts plausibly suggesting a claim for IIED against Brown. In New York, an IIED claim "must satisfy the following four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." Newton v. City of New York, 566 F. Supp. 2d 256, 275 (S.D.N.Y. 2008) (quoting Howell v. New York Post. Co., 81 N.Y. 2d 115, 121 (1993)).

Construing the Amended Complaint liberally, Plaintiff asserts that Brown's statements repeatedly referring to him as "Friend" in front of other inmates and continuing to do so loudly after his jaw was broken amounts to a claim for IIED. Compl. at 3, 5, 7. The Court agrees that Plaintiff has plausibly stated a claim of IIED against Brown. Given the repetition of these statements, risk of violence toward Plaintiff, and severe sense of fear that Plaintiff expressed, the Court finds that Plaintiff's IIED claim against Brown survives review. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss.

However, Plaintiff does not specify the corresponding defendants for the remainder of his state law claims. Am. Compl. at 7. Because of the lack of factual allegations pertaining to these

16

state law claims, the remaining state law claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

Plaintiff also attempts to assert state law assault and battery claims against inmates Reed, Milord, and Johnson. Am. Compl. at 7. Importantly, however, Plaintiff has not alleged that Reed, Milord, or Johnson acted under the color of state law, and he does not allege that the inmates conspired with defendants to violate Plaintiff's constitutional rights. See generally id. Therefore, to the extent that Plaintiff attempts to assert any Section 1983 claims against the inmates, those claims are dismissed for failure to state a claim. See Dkt. No. 17 at 11–12. Accordingly, because no federal claims exist against these inmates, the Court declines to exercise supplemental jurisdiction over state law claims against the inmates for the purposes of "judicial economy, convenience, fairness and comity." Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) (holding that factors including judicial economy, convenience, fairness, and comity can serve as bases for declining to exercise jurisdiction over state law claims).

## V.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's motion for reconsideration (Dkt. No. 19) is **DENIED as moot**; and it is further

**ORDERED**, that Plaintiff's motion for copies (Dkt. No. 19) is **GRANTED;** and it is further

**ORDERED**, that the Clerk of the Court shall take the following action: (1) substitute "Nick Anzalone" in place of "Nick Doe;" (2) add Brown, Reynolds, and Deusler to the Docket

17

report for this action; and (3) attach Plaintiff's submission (Dkt. No. 5-2) to the Amended

Complaint (Dkt. No. 21); and it is further

ORDERED, that the Amended Complaint (Dkt. No. 21) is accepted for filing and is the

operative pleading; and it is further

ORDERED, that the First Amendment retaliation claims and accompanying conspiracy

claims against Anzalone, Brown, Reynolds, and Deusler survive the Court's sua sponte review

under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) and require a response; and it is

further

ORDERED, that the Eighth Amendment failure to protect claim against Brown survives

the Court's sua sponte review under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) and

require a response; and it is further

ORDERED, that the intentional infliction of emotional distress claim against Brown

survives the Court's sua sponte review under 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. §

1915A(b) and require a response; and it is further

ORDERED, that all remaining claims are **DISMISSED** pursuant to 28 U.S.C. §

1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be

granted;[5] and it is further

---

[5] Generally, when a district court dismisses a pro se action sua sponte, the plaintiff will be
allowed to amend his action. See Gomez v. USAA Fed. Savings Bank, 171 F.3d 794, 796 (2d
Cir. 1999). However, an opportunity to amend is not required where the plaintiff has already
been afforded the opportunity to amend. See Shuler v. Brown, No. 07-CV-0937, 2009 WL
790973, at *5 & n.25 (N.D.N.Y. March 23, 2009) ("Of course, an opportunity to amend is not
required where the Plaintiff has already amended his complaint."); see also Yang v. New York
City Trans. Auth., No. 01-CV-3933, 2002 WL 31399119, at *2 (E.D.N.Y. Oct. 24, 2002)
(denying leave to amend where Plaintiff had already amended complaint once); Advanced

18

**ORDERED**, that upon receipt from Plaintiff of the documents required for service of process, the Clerk shall issue summonses and forward them, along with copies of the amended complaint, to the United States Marshal for service upon defendants. The Clerk shall forward a copy of the summonses and amended complaint to the Office of the Attorney General, together with a copy of this Memorandum-Decision and Order; and it is further

**ORDERED**, that a response to the Amended Complaint be filed by Defendants, or their counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED**, that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so will result in the dismissal of his action**; and it is further

**ORDERED**, that the Clerk shall serve a copy of this Memorandum-Decision and Order, a courtesy copy of Plaintiff's exhibits at Dkt. No. 16, and a courtesy copy of the docket sheet on Plaintiff.

**IT IS SO ORDERED.**

---

Marine Tech. v. Burnham Sec., Inc.,16 F. Supp. 2d 375, 384 (S.D.N.Y. 1998) (denying leave to amend where the plaintiff had already amended complaint once).

19

DATED:    December 19, 2022
             Albany, New York

LAWRENCE E. KAHN
United States District Judge