**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

MICHAEL ANDERSON BALENTINE,

                            Plaintiff,

    v.

NICK ANZALONE, et al.,

                            Defendants.

No. 9:21-CV-1383
(LEK/CFH)

---

**APPEARANCES:**

Michael Anderson Balentine
15 Phelps Avenue
Apt. 4
Rochester, New York 14608
Plaintiff pro se

Attorney General for the
State of New York
The Capitol
Albany, New York 12224
Attorneys for defendant(s)

**OF COUNSEL:**

RACHAEL OUIMET, ESQ.
Assistant Attorney General

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff pro se Michael Anderson Balentine ("plaintiff"), who was at all relevant times in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at Marcy Correctional Facility ("Marcy C.F."), brings this action pursuant to 42 U.S.C. § 1983, alleging that defendants Correctional Officer Nick

---

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Anzalone, and Correctional Sergeants Brown, F. Reynolds, and J. Deusler violated plaintiff's constitutional rights under the First and Eighth Amendments and his state law rights via intentional infliction of emotional distress ("IIED"). See Dkt. No. 21 ("Am. Compl."); see also Dkt. No. 22 at 18.[2]  Presently before the Court is defendant Brown's ("defendant Brown") partial motion to dismiss the state law IIED claim pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6). See Dkt. No. 26.  Plaintiff has not responded.  For the following reasons, it is recommended that defendant's motion be denied.

## I. Factual Background[3]

Plaintiff alleges that on January 28, 2021, an incarcerated individual, Jonny Reed, told plaintiff that he would have to do the dishes and clean for Bloods gang members because plaintiff "was a 'Rapo[.]'" Am. Compl. at 2, ¶ 19.  Plaintiff was assaulted on February 6, 2021, by Reed and another Bloods gang member "because [he] had refused to do their dishes and other cleaning chores[.]" Id. at 3, ¶ 21.  Plaintiff reported the assault and was transported to another dorm, during which time defendant Deusler and other correctional officers told plaintiff that because he was "a 'nasty Rapo[,]'" they would have forced him to do their dishes, too. Id. at 3, ¶ 22.  Defendant "Deusler shared the details of the incident with his group of friends[,]" including defendants Anzalone, Brown, and Reynolds. Id. at 3, ¶ 22; 1, ¶ 7.  Then, "[o]n two

---

[2] Citations to filings on the docket are to the pagination generated by CM/ECF in the header of each page.
[3] The undersigned relays only those facts from plaintiff's Amended Complaint that are relevant to defendant Brown's partial motion to dismiss.

2

occasions between February 27 and March 11, 2021, Defendant Brown entered H2 on the evening shift and observed [plaintiff] cleaning the bathroom area." Id. at 3, ¶ 27. Defendant Brown said to plaintiff, "Hey Friend! Now that's what I like to see!" Id. Plaintiff contends that the use of the word "friend" was a way to indicate to other incarcerated individuals that plaintiff was friends with the correctional officers which would cause plaintiff to be "assaulted and beaten again." Id. Plaintiff feared for his safety and believed that Brown was conspiring with defendants Reynolds and Anzalone to place plaintiff in harm's way by other incarcerated individuals. See id. On March 12, 2021, another incarcerated individual, Johnson, approached plaintiff and told him that he was "required to do the dishes and other cleaning chores of the Bloods because [he] was a 'Rapo.'" Id. at 4, ¶ 33. Plaintiff said he would not clean for free, and Johnson physically assaulted plaintiff. See id.

On March 14, 2021, defendant Brown entered D1 with defendants Reynolds and Deusler. See Am. Compl. at 5, ¶ 38. "Brown gave the order for Count." Id. After all the incarcerated individuals returned to their cubes and they were "silent," defendant Brown went to plaintiff's cube,

> stopped in front of [him] and faced [him] and made the following speech in a loud voice to that everyone in the dorm could hear him: "Hi, Friend! How are you doing today? Great! Hey everybody, I want you all to know that my Friend here is really good at doing dishes! So, if any you here need to have your dishes done, bring them to my Friend here because he's got that special Palmolive Hand!"

Id. ¶ 39. Another correctional officer asked plaintiff, "What the f*** did you do to piss Brown off?!" Id. at 5, ¶ 40. Other incarcerated individuals "made derogatory comments to [plaintiff] and stated that Brown must want to them to 'beat [plaintiff's] ass.'" Id. Plaintiff filed a grievance concerning defendant Brown's statements, the remarks made

3

to plaintiff by other inmates "that Sgt. Brown wanted them to 'beat [his] ass[,]'" and stated that he requested "to be moved to a safe dorm." Dkt. No. 21-2 at 16. When plaintiff was interviewed about his grievance, he "told [Deputy Superintendent for Security Snyder] that everyone in D1 had witnesses Sergeant Brown's speech attempt to have [plaintiff] hurt or killed." Am. Compl. at 6, ¶ 47.

## II. Motion to Dismiss Standard[4]

Defendant Brown moves to dismiss plaintiff's IIED claim under Rule 12(b)(6) which allows a party to seek dismissal of a claim for "failure to state a claim upon which relief can be granted[.]" FED. R. CIV. P. 12(b)(6); see also Dkt. No. 26-1 at 3-4. He moves for dismissal solely on the ground of his immunity from suit under N.Y. Correction Law section 24. See id. at 5-6. Whether defendant Brown is immune from suit under section 24 concerns whether this Court has jurisdiction over the state law IIED claim; therefore, defendant's motion is more properly brought under Rule 12(b)(1) which concerns motions to dismiss for "lack of subject-matter jurisdiction[.]" FED. R. CIV. P. 12(b)(1); see also Torres-Acevedo v. Blair, No. 9:21-CV-52 (GLS/ATB), 2021 WL 4993540, at *6 (N.D.N.Y. Oct. 15, 2021) ("Section 24 provides immunity for DOCCS employees from lawsuits based on acts or omissions within the course of their employment and requires such actions be brought in the New York Court of Claims as a claim against the state. If a plaintiff brings such an action in federal court, the court

---

[4] All unpublished decisions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

4

should dismiss the state law claims for lack of subject matter jurisdiction."), report and recommendation adopted, 2021 WL 5298674 (N.D.N.Y. Nov. 15, 2021).

Nevertheless, "[t]he standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are substantively identical." Feldheim v. Fin. Recovery Servs., Inc., 257 F. Supp. 3d 361, 365 (S.D.N.Y. 2017) (citation omitted). "When the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the complaint or the complaint and exhibits attached to it . . . the plaintiff has no evidentiary burden." Carter v. HealthPort Techs., LLC, 822 F.3d 47, 56 (2d Cir. 2016). Insofar as plaintiff did not respond to defendant Brown's Rule 12(b)(6) motion, "[p]laintiff's failure to respond to the motion to dismiss does not relieve the Court of its obligation to consider the merits of plaintiff's claims." Arena v. Irondequoit Police Dep't, 228 F. Supp. 3d 242, 243 (W.D.N.Y. 2017); see also Mobley v. Crane, No. 9:21-CV-299 (BKS/ATB), 2021 WL 5813689, at *2 (N.D.N.Y. Nov. 3, 2021), report and recommendation adopted, 2021 WL 5810406 (N.D.N.Y. Dec. 7, 2021). "If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." Arena, 228 F. Supp. 3d at 243 (quoting McCall v. Pataki, 232 F.3d 321, 322 (2d Cir. 2000)); see also Goldberg v. Danaher, 599 F.3d 181, 183 (2d Cir. 2010) ("Because a motion under Rule 12(b)(6) presents a pure legal question, based on allegations contained within the four corners of the complaint, the district court is equipped to make a determination on the merits[]" even if a party does not respond.); Parry v. VA Med. Ctr., 408 F. Supp. 3d 281, 283 (W.D.N.Y. 2019) (considering merits of 12(b)(1) motion despite the plaintiff's failure to respond); Hylton v. J.P. Morgan Chase Bank, N.A., 338

5

F. Supp. 3d 263, 268 (S.D.N.Y. 2018) (same). However, plaintiff's failure to respond is not without significance. Under the Court's Local Rules,

> [w]here a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown.

L.R. 7.1(a)(3).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Darby v. Greenman, 14 F.4th 124, 127 (2d Cir. 2021) (internal quotation marks omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted); see also Tandon v. Captain's Cove Marina of Bridgeport, Inc., 752 F.3d 239, 243 (2d Cir. 2014) ("In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction."). "Courts are 'obligated to construe a *pro se* complaint liberally.'" Tafari v. McCarthy, 714 F. Supp. 2d 317, 339 (N.D.N.Y. 2010) (quoting Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009)). "However, 'the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" Id. (quoting Iqbal, 556 U.S. at 678); see also Nat'l Rifle Ass'n of Am. v. Vullo, 49 F.4th 700, 713 (2d Cir.

2022) ("We accept as true factual allegations but not conclusions, such as statements concerning a defendant's state of mind."); Darby, 14 F.4th at 127 (citations and quotation marks omitted) (first and second alterations in original) ("[A] complaint that merely tenders naked assertions devoid of further factual enhancement' fails to meet this standard, as do unadorned, the-defendant-unlawfully-harmed-me accusation[s][.]").

### III.  Analysis

Defendant Brown argues that plaintiff has failed to state an IIED claim because New York Correction Law section 24 immunizes defendant Brown from liability insofar as he was acting within the scope of his employment.  See Dkt. No. 26-1 at 5-6.  New York Correction Law section 24 states,

> 1. No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department, which for purposes of this section shall include members of the state board of parole, in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.
>
> 2. Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any officer or employee of the department shall be brought and maintained in the court of claims as a claim against the state.

N.Y. Correct. Law § 24.  The statute "provides DOCCS employees immunity from lawsuits based on acts or omissions within the course of their employment.  Such actions must be brought in the New York Court of Claims as a claim against the state." Purcelle v. Thomas, 9:18-CV-77 (GLS/TWD), 2020 WL 1516421, at *15 (N.D.N.Y. Mar. 6, 2020) (citations omitted), report and recommendation adopted, 2020 WL 1511079

7

(N.D.N.Y. Mar. 30, 2020). "Employees are considered to be acting within the scope of their employment so long as they are carrying out their assigned duties, 'no matter how irregularly, or with what disregard of instructions.'" Bernardi v. New York State Dep't of Corr., No. 19-CV-11867 (KMK), 2021 WL 1999159, at *5 (S.D.N.Y. May 19, 2021) (quoting Cepeda v. Coughlin, 513 N.Y.S.2d 528, 530 (App. Div. 1987)). "Employees, however, are not found to be acting within their employment scope when their conduct, while in the course of employment, is 'for purely personal reasons unrelated to the employer's interests' and 'a substantial departure from the normal methods of performing [their] duties.'" Id. (quoting White v. Montesano, 466 F. Supp. 3d 331, 335 (W.D.N.Y. 2020)); see also Livingston v. Griffin, No. 9:04-CV-00607 (JKS), 2007 WL 2437433, at *2 (N.D.N.Y. Aug. 22, 2007) ("New York courts have held that § 24(1) is inapplicable where the act is committed solely for personal reasons unrelated to the employer's interests."). "[C]ourts have looked to the following factors to determine whether actions fall within the actor's scope of employment:"

> the connection between the time, place[,] and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; whether the act is one commonly done by any employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated.

Francis v. Fiacco, No. 9:15-CV-00901 (MAD/ATB), 2016 WL 3448617, at *4 (N.D.N.Y. June 20, 2016) (quoting Ierardi v. Sisco, 119 F.3d 183, 187 (2d Cir. 1997)).

"The Second Circuit has held that the immunity from suit in state court provided to DOC[C]S employees by § 24 extends to suits for tort claims based on state law against DOC[C]S employees in federal court." Williams v. Ferrari, No. 9:15-CV-0988 (GTS/DJS), 2018 WL 1179603, at *8 (N.D.N.Y. Feb. 5, 2018) (citation omitted), report

8

and recommendation adopted, 2018 WL 1183385 (N.D.N.Y. Mar. 6, 2018).  "The Second Circuit . . . has made it clear that [the well-established doctrine of pendent jurisdiction] does not preclude application of section 24 to claims brought in federal court." Zulu v. Wells, No. 9:20-CV-312 (LEK/DJS), 2020 WL 7265191, at *2 (N.D.N.Y. Sept. 29, 2020), report and recommendation adopted, 2020 WL 6482034 (N.D.N.Y. Nov. 4, 2020) (citing Ierardi, 119 F.3d at 186).

Immunity under N.Y. Correction Law section 24 has been applied numerous times in the context of an IIED claim.  See Ficklin v. Rusinko, 351 F. Supp. 3d 436, 444-47 (W.D.N.Y. 2019); Francis, 2016 WL 3448617, at *3-4; Flint v. Jun, 541 F. Supp. 3d 284, 287-88 (W.D.N.Y. 2021); Quezada v. Roy, No. 14-CV-4056 (CM), 2015 WL 5970355, at *24-25 (S.D.N.Y. Oct. 13, 2015) (concluding that section 24 would bar the plaintiff's IIED claim stemming from an assault, name calling, and defendant officers labeling the plaintiff as a "snitch" but without analysis of the scope of the employment analysis); Robinson v. Tillotson, No. 16-CV-5420 (NSR), 2018 WL 4682226, at *8 (S.D.N.Y. Sept. 27, 2018); Doe v. New York, No. 10-CV-1792 (RJD/VVP), 2012 WL 4503409, at *7 (E.D.N.Y. Sept. 28, 2012); Muhammad v. Annucci, No. 19-CV-3258 (GBD/OTW), 2023 WL 2557314, at *4, n.2 (S.D.N.Y. Mar. 17, 2023) (dismissing IIED claim as barred by N.Y. Correction Law section 24 but without conducting any analysis); Ortiz v. Ledbetter, No. 19-CV-2493 (CS), 2020 WL 2614771, at *9, n.8 (S.D.N.Y. May 22, 2020); Aghoghoubia v. Noel, No. 17-CV-1927 (NGG/SJB), 2019 WL 181309, at *3-4 (E.D.N.Y. Jan. 11, 2019); Leckie v. City of New York, No. 19-CV-6719 (PGG/RWL), 2022 WL 2442375, at *25 (S.D.N.Y. June 30, 2022), report and recommendation adopted in part, rejected in part, 2023 WL 3168699 (S.D.N.Y. May 1, 2023); Johnson v.

9

Owens, No. 9:20-CV-0982 (LEK/CFH), 2022 WL 958127, at *5, n.3 (N.D.N.Y. Mar. 30, 2022) (noting in the alternative that even if the plaintiff had sufficiently pleaded an IIED claim, it would be barred under section 24 without conducting an analysis on the scope of employment issue).

However, other "[c]ourts that have considered the issue have held that personal harassment unrelated to an employee's assigned duties does not entitle a corrections department employee to Section 24 immunity." Bernardi, 2021 WL 1999159, at *6 (citing Martin v. N.Y. State Dep't of Corr. Serv., 224 F. Supp. 2d 434 (N.D.N.Y. 2002) (declining to extend section 24 immunity to sexual harassment claim); Ierardi, 119 F.3d at 186 (2d Cir. 1997) (same)). The court in Bernardi concluded that the defendant was not immune from suit under section 24 because the defendant "told [the p]laintiff[, a DOCCS electrician,] to 'go back to [his] own country,' and used Italian slurs when talking to him. None of these comments related to [the defendant's] job functions." Id. (citation omitted).

This Court has also declined to extend immunity under section 24 where the "last three *Ierardi* factors weigh in [the p]laintiff's favor" despite the defendants, as DOCCS' employee, engaging in the allegedly unlawful conduct while working in the prison. Tranchina v. McGrath, No. 9:17-CV-1256 (MAD/DEP), 2018 WL 3037377, at *3 (N.D.N.Y. June 19, 2018) (citations omitted) ("The last three *Ierardi* factors weigh in [the p]laintiff's favor. First, assaulting an inmate without cause and then submitting a false misbehavior is not the ordinary conduct of a DOCCS employee. Second, such conduct is a substantial departure from a prison guard's 'normal methods of performance.' Third, it is not reasonably foreseeable that a guard, whose duties include maintaining

10

order and protecting inmates from harm, would assault an inmate without provocation and then submit a false misbehavior report. . . . [T]he attack was motivated by a desire to settle a personal vendetta outside of the interests of DOCCS."); Brown v. New York, No. 9:17-CV-1036 (MAD/ATB), 2018 WL 3130593, at *5 (N.D.N.Y. June 26, 2018) (citation omitted) ("The allegations regarding false arrest and imprisonment . . . fall outside the scope of [the d]efendant['s] employment. . . . [T]the issue here is not that [the d]efendant [] searched [the p]laintiff, but instead that [the d]efendant []intentionally planted a weapon on him. The complaint alleges that [the d]efendant['s] actions against [the p]laintiff were motivated by his desire to settle a dispute between the two. This desire to settle a personal vendetta was a motivation outside of the interests of DOCCS."); Ozzborn v. New York, No. 9:17-CV-1039 (MAD/ATB), 2018 WL 3104448, at *5 (N.D.N.Y. June 22, 2018) (citation omitted) ("First, planting a weapon on an inmate is not an act commonly performed by a prison guard, or any state official for that matter. Second, such conduct is clearly a radical departure from a prison guard's 'normal methods of performance.' Third, it is not reasonably foreseeable that a guard, whose duties include keeping contraband out of the hands of inmates, would smuggle a weapon into the prison for the purpose of planting it on an inmate.").

Defendant Brown cites four cases as examples of this Court dismissing state law claims on immunity ground under section 24 where the defendant was determined to be acting within the scope of his or her employment. See Dkt. No. 26-1 at 5-6 (citing Livingston v. Hoffnagle, No. 17-CV- 1158 (MAD/DEP), 2019 WL 409366, at *7 (N.D.N.Y. Feb. 1, 2019); Alke v. DOCCS, No. 9:16-CV-845 (DNH/ATB), 2018 WL 5297809, at *8 (N.D.N.Y. Oct. 25, 2018), aff'd, 826 F. App'x 4 (2d Cir. 2020) (summary order); Olutosin

v. Lee, 2016 WL 2899275, at *12 (S.D.N.Y. May 16, 2016); Hall v. NYS Dep't Corr. & Cmty. Supervision, No. 9:12-CV-0377 (GTS/DEP) 2015 WL 901010, *31 (N.D.N.Y. Mar. 3, 2015)).[5]

Each case is inapposite. First, three of the cases do not include an IIED claim. See Hall, 2015 WL 901010, *10-11, *31; Alke, 2018 WL 5297809, at *1-9; Olutosin, 2016 WL 2899275, at *12. Second, Alke did not discuss N.Y. Correction Law section 24. See Alke, 2018 WL 5297809, at *1-9. Third, insofar as Hoffnagle included an IIED claim, the facts are distinguishable. There, the plaintiff claimed emotional distress after being denied protective custody despite being in in fear for his safety; being placed in a holding cell, deprived of food, water, and the use of the bathroom for five hours; and then being placed "in a cell with 'a violent gang banger.'" 2019 WL 409366, at *1. The Court dismissed the claim as barred by Section 24 because "the alleged conduct occurred while [the d]efendants were at work performing their job duties." Id. at *7. Hoffnagle is distinguishable because placing plaintiff in a cell is a job typically performed by DOCCS correctional officers, there were no allegations that the "violent gang banger" harmed or threatened to harm the plaintiff prior to being placed in the cell together, and there were no allegations that the defendants deprived him of food or water because of a personal vendetta. Id. at *1. Insofar as Hoffnagle and the case at hand are similar because they concern conduct that was allegedly done in "retaliation," Livingston v. Hoffnagle, No. 9:17-CV-1158 (MAD/DEP), 2018 WL 7917922, at *2 (N.D.N.Y. Nov. 2,

---

[5] Defendant Brown's counsel declared that the unpublished cases cited in the motion to dismiss were provided to plaintiff. See Dkt. No. 26-2. Therefore, the undersigned has not provided a copy of those cases to plaintiff.

2018), or with an intent to cause harm because of dislike for plaintiff, see Am. Compl. at 3, ¶¶ 22, 27; 5, ¶¶ 38-39, the Court comes to a different conclusion than in Hoffnagle.

Defendant Brown argues that plaintiff's allegations relate to "conduct [that] occurred while Defendant Brown was at work performing his job duties. As alleged by [p]laintiff in his complaint, Defendant Brown made these alleged statements while performing 'the count' in [p]laintiff's housing unit." Dkt. No. 26-1 at 5 (citing Am. Compl. at 5, ¶ 39). The Court agrees that plaintiff's allegations against defendant Brown relate to statements defendant Brown made while he was performing a count of the incarcerated individuals—which is a part of his job. See Am. Compl. at 5, ¶ 39; see also Ierardi, 119 F.3d at 187 (nothing "the connection between the time, place[,] and occasion for the act" and "the history of the relationship between employer and employee as spelled out in actual practice"). However, the comments fall outside defendant Brown's scope of employment as the last three Ierardi factor weigh in plaintiff's favor.[6]

Calling plaintiff, a "friend," to encourage other incarcerated individuals to target him is not an act that is commonly done and departs from the normal procedures of counting the incarcerated individuals and from one of the primary job functions of a correctional officer: keeping inmates safe from harm. See Hartry v. Cnty. of Suffolk, 755 F. Supp. 2d 422, 440 (E.D.N.Y. 2010) (quoting Sanchez v. State of New York, 99 N.Y.2d 247, 253 (2002)) ("Having assumed physical custody of inmates, who cannot protect and defend themselves in the same way as those at liberty can, the State owes a duty of care to safeguard inmates, even from attacks by fellow inmates."). Plaintiff

---

[6] Defendant Brown did not discuss the Ierardi factors. See Dkt. No. 26-1 at 5-6.

13

alleges that defendant Brown's comments were made to have plaintiff harmed by other incarcerated individuals because he was a "Rapo." Am. Compl. at 3, ¶¶ 21-22, 27; 5, ¶¶ 39-40. This motivation is unrelated to the interests of DOCCS. See Griffin, 2007 WL 2437433, at *3 ("While the Court agrees with [the d]efendants that the service of food itself would clearly fall within the parameters of § 24, that is not the true issue. The true issue is whether the knowing, deliberate and intentional service of food adulterated with drugs falls within the parameters of § 24. The Court thinks not. This [is] not a case of negligence, which would fall within the scope of § 24, but a case in which it is alleged the acts were done knowingly, deliberately and intentionally."). Further, DOCCS likely could not have reasonably anticipated that defendant Brown would make such comments towards plaintiff in an effort to have him harmed by other inmates. See Tranchina, 2018 WL 3037377, at *3 ("[I]t is not reasonably foreseeable that a guard, whose duties include maintaining order and protecting inmates from harm, would assault an inmate without provocation and then submit a false misbehavior report."). Defendant Brown does not argue otherwise. See Dkt. No. 26-1 at 5-6.

Many of the cases which have held that section 24 bars a plaintiff's IIED claim relate to uses of physical force by correctional officers during an allegedly provoked attack and/or concern the medical care that the plaintiff received. See, e.g., Ficklin, 351 F. Supp. 3d at 441; Flint, 541 F. Supp. 3d at 285; Robinson, 2018 WL 4682226, at *8; Doe, 2012 WL 4503409, at *7; Muhammad, 2023 WL 2557314, at *4, n.2; Aghoghoubia, 2019 WL 181309, at *3; Leckie, 2022 WL 2442375, at *25. Contrarily, in this case, as in Bernardi and Tranchina, defendant Brown's conduct was unprovoked and did not have any relation to the act of performing the Count. See Tranchina, 2018

WL 3037377, at *3; Bernardi, 2021 WL 1999159, at *6; see also Murray v. Reif, 828 N.Y.S.2d 669, 670 (App. Div. 2007) ("Given its required liberal construction, the complaint alleges that defendant assaulted plaintiff, threatened him, read his legal mail without permission, and importuned others not to feed plaintiff while he was in special housing. If true, it cannot be concluded that defendant was acting within the scope of his employment and Correction Law § 24 would not divest Supreme Court of jurisdiction of these claims."). But see Turner v. White, 443 F. Supp. 2d 288, 298 (E.D.N.Y. 2005) (extending immunity under section 24 for IIED claim alleging unprovoked attack by parole officers); Robinson, 2018 WL 4682226, at *1, *8 (extending section 24 immunity to an IIED claim alleging that during a pat frisk before entering a suicide watch program and while complying with orders for the pat frisk, a correctional officer began to physically assault the plaintiff); Aghoghoubia, 2019 WL 181309, at *1, *3-4 (extending immunity to an IIED claim alleging that while waiting in the parole office and after complying with an order to remove his hat, the defendant parole officers physically assaulted the plaintiff).

Here, defendant Brown's statements were not related to his safety or the safety of the institution. Accepting all facts as true, plaintiff has pleaded enough facts to demonstrate that defendant Brown was acting outside the scope of his employment when he made comments during the Count that caused plaintiff to fear being physically harmed by other incarcerated individuals. See Turley v. ISG Lackawanna, Inc., 774 F.3d 140, 161 (2d Cir. 2014) ("Because it is usually motivated by something personal, harassment, however egregious, ordinarily does not fall within the scope of employment."); George v. New York City Transit Auth., No. 04-CV-3263 (RJD/MDG),

2008 WL 4274362, at *3 (E.D.N.Y. Sept. 17, 2008) (citations omitted) ("[The plaintiff alleges that [the defendant] harassed him with constant racial and ethnic slurs and assaulted him.  Such alleged intentional conduct manifest [the defendant's] personal animus toward [the] plaintiff, rather than any intent to benefit his employer."). As defendant Brown was not acting within the scope of his employment, he is not immune from liability under section 24, and the undersigned recommends denying defendant Brown's partial motion to dismiss.

### IV.  Conclusion

**WHEREFORE**, for the reasons set forth above, it is hereby:

**RECOMMENDED**, that defendant's motion to dismiss (Dkt. No. 26) be **DENIED**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health

and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 6(a), 6(e), 72.[7]

      Dated: July 11, 2023
            Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge

---

[7] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. See Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. See id. § 6(a)(1)(C).